### JOHN E. MITCHELL CO. v. CHICKASHA COTTON OIL CO.

No. 24970.   May 21, 1935.

Rehearing Denied July 23, 1935.

H. M. Thacker, for plaintiff in error.

W. B. Garrett, for defendant in error.

PER CURIAM. Jacobs-Carmack Gin, a corporation, on November 14, 1929, executed to Chickasha Cotton Oil Company, a corporation, its promissory note in the principal sum of $8,000, due one year after date with interest thereon at the rate of 8 per cent. per annum, and as security for the payment of said note Jacobs-Carmack Gin executed a real estate mortgage to Chickasha Cotton Oil Company upon the following property:

"Lots one (1), two (2), three (3), four (4), five (5), six (6), seven (7), eight (8), nine (9), thirteen (13), fourteen (14), fifteen (15), sixteen (16), seventeen (17), eighteen (18), nineteen (19), twenty (20), twenty-one (21), in block seven in the original town of Gibson (Gould P. O.) Okla., according to the record plat thereof, together with all buildings, machinery, and improvements of every character now located or which may be hereafter located thereon, consisting of a complete 5-70 saw Continental gin plant with 5-70 saw Munger huller brush gins and feeders, lint flue, condenser, belt distributor, double box hydraulic press, cleaners, fans and all elevators, conveyors, shafting, pulleys, belting, piping, fittings, fixtures, and connections, and everything necessary to a complete outfit including scales, tools, fire extinguishing supplies and equipment; one 100 H. P. Fairbanks-Morse motor for power and one 10 H. P. Fairbanks-Morse motor for cotton press."

--which was filed for record in the office of the county clerk of Harmon county November 14, 1929, and is duly recorded in Book 65 at page 486 of the records of said office. The fifth paragraph of said mortgage reads as follows:

"It is further understood between the parties hereto that all machinery, fixtures, and appliances of every character now in or upon said premises, is and shall continue to be a part and parcel of the security for the payment of the indebtedness owing by said first party under this mortgage, and that no part of said machinery, fixtures or appliances now upon said property or hereafter placed in or upon said property during the life of this mortgage, shall be displaced or removed from its place upon said premises and supplanted by other machinery, fixtures or appliances without the written consent, in advance of the holder of this mortgage; and that if any of said machinery, fixtures or appliances shall be removed from or displaced and be supplanted or replaced by other machinery, fixtures or appliances without the written consent in advance of the holder, of this mortgage, then in that event the holder of this mortgage shall have the right to declare the entire sum remaining unpaid under this mortgage due and payable at its option and shall have the right to at once demand payment thereof, and if necessary, to institute proceedings to foreclose said mortgage as provided for under the laws of this state. And it is further understood and agreed between the parties, that any and all such additional machinery, fixtures or appliances or attachments to the property hereinbefore described, shall be and at once become a part of the realty, and as security under this mortgage for the payment thereof and a superior lien to any and all claims whatsoever against the mortgagor herein for whatever sum may remain due under this mortgage."

Concurrently with the execution and delivery of the real estate mortgage, Jacobs-Carmack Gin, a corporation, executed and delivered to Chickasha Cotton Oil Company a chattel mortgage covering—

"A complete 5-70 saw Continental gin plant consisting of 5-70 saw Munger huller brush gins and feeders, lint flue, condenser, belt distributor, double box hydraulic press, cleaners, fans and all elevators, conveyors, shafting, pulleys, belting, piping, fittings, fixtures and connections and everything necessary to a complete outfit or which may be hereafter added thereto, including scales, tools, fire extinguishing supplies and equipment, also one 100 H. P. Fairbanks-Morse motor for power, one 10 H. P. Fairbanks-Morse motor for cotton press. The above property is located on lots 1 to 9, and 13 to 21, inclusive in block 7, in the town of Gould, Okla."

—which said chattel mortgage was filed in the office of the county clerk of Harmon county November, 14, 1929. This chattel mortgage contains the following provision:

"It is understood and agreed between the parties that all machinery, fixtures and ap-

pliances of every character now in, upon or a part of the property hereinbefore described and embraced under this mortgage, is to be and remain as it now exists as security hereunder, and that none of the same is to be removed or supplanted by the grantor herein or by any other person without the written consent of the holder of this mortgage in advance of such action, and all machinery, fixtures, appliances and additions thereto made or placed in or upon said property shall at once become a part of the security for the payment in full of the sum secured by this mortgage, and that the lien under this mortgage upon any and all additions to said property is and shall be prior and superior to all claims of every character against said mortgagor, or his assigns, and this lien so agreed upon shall attach and become operative in favor of the mortgagee herein upon all machinery, appliances, or attachments, placed in or upon the property hereinbefore described to supplant any machinery, fixtures or appliances embraced in this mortgage."

August 7, 1930, Jacobs-Carmack Gin, a corporation, executed and delivered to John E. Mitchell Company, hereinafter referred to as plaintiff. its two certain promissory notes in the principal sum of $766.67 each, due and payable December 1, 1930, and December 1, 1931, respectively, with interest thereon from date at the rate of 8 per cent. per annum, and as security for the payment of said notes Jacobs-Carmack Gin, a corporation, executed and delivered to plaintiff a chattel mortgage covering five size 70 Mitchell F. E. C. units located in the gin plant of Jacobs-Carmack Gin at Gould, Okla., which chattel mortgage was filed in the office of the county clerk of Harmon county August 28, 1930.

Plaintiff instituted this action against Jacobs-Carmack Gin, a corporation, and Chickasha Cotton Oil Company, a corporation, by filing its petition in the office of the court clerk of Harmon county July 29, 1932 alleging the execution and delivery of the notes above referred to by Jacobs-Carmack Gin to plaintiff and the execution by Jacobs-Carmack Gin, a corporation, of the chattel mortgage of August 16, 1930, and the filing thereof; further alleging that Chickasha Cotton Oil Company, a corporation, asserted some right, title, interest, lien and equity in and to the property described in the chattel mortgage of August 16, 1930, the nature and extent of which was unknown to plaintiff, but that any and all such claims and assertions of any right, title, interest, equity, lien and possession of Chickasha Cotton Oil Company in and to the property covered by the chattel mortgage of August 16, 1930, were junior and inferior to the claim, right, title, lien, and interest of plaintiff in and to said property.

Chickasha Cotton Oil Company, hereinafter referred to as defendant, filed its separate answer on September 6, 1932, generally denying the material allegations contained in plaintiff's petition, and specifically denying that plaintiff had any lien in or upon the five size 70 Mitchell F. E. C. units, or any other machinery or equipment located in the Jacobs-Carmack Gin at Gould, Okla., or that the plaintiff had any right, title, interest, or ownership therein of any kind or character whatsoever, alleging the execution of the $8,000 promissory note by Jacobs-Carmack Gin on November 14, 1929, the execution and recording of the real estate mortgage of November 14, 1929, the execution and filing of the chattel mortgage of the same date and that there was then due the defendant from Jacobs-Carmack Gin the sum of $10,598.87, with interest thereon at the rate of 8 per cent. per annum from May 20, 1932, together with attorney's fees amounting to $971.89. The defendant further alleged that on June 2, 1932, it filed in the district court of Harmon county, Okla., an action entitled Chickasha Cotton Oil Co., a Corporation, Plaintiff, v. Jacobs-Carmack Gin, a Corporation, and John E. Mitchell Company, a Corporation, Defendants, No. 2789 on the docket of said court, in which it prayed judgment against Jacobs-Carmack Gin, a corporation, for the sum of $10,598.87, with interest thereon at the rate of 8 per cent. per annum from May 20, 1932, and $971.89 attorney's fee and foreclosure of the real estate mortgage and the chattel mortgage executed by Jacobs-Carmack Gin, a corporation, to the defendant, and that all matters and things involved in case No. 2807 in the district court of Harmon county, John E. Mitchell Co., a Corporation, Plaintiff, v. Jacobs-Carmack Gin, a Corporation, and Chickasha Cotton Oil Company, a Corporation, Defendants, were involved in case No. 2789 in the district court of Harmon county, entitled Chickasha Cotton Oil Co., a Corporation. Plaintiff, v. Jacobs-Carmack Gin, a Corporation, and John E. Mitchell Co., a Corporation, Defendants, and that the two actions should be determined together. There was no consolidation for the purpose of trial of the two cases, but case No. 2789, Chickasha Cotton Oil Co., a Corporation, Plaintiff, v. Jacobs Carmack Gin, a Corporation, and John E. Mitchell Co., a Corporation, Defendants, was tried to the court on October 7, 1932, and it appearing that the defendant John E. Mitchell Company had not been served with summons, that cause was dismissed as to John E. Mitchell Company, and

the plaintiff, Chickasha Cotton Oil Company, a corporation, took a default judgment against Jacobs-Carmack Gin, a corporation, in the sum of $10,598.87, with interest thereon at the rate of 8 per cent. per annum from May 20, 1932, attorney's fee of $971.89, and all costs of the action.

A journal entry of judgment bearing date of October 7, 1932, was filed in said cause No. 2789 on October 8, 1932, in which the court decreed the foreclosure of Chickasha Cotton Oil Company's real estate mortgage and the chattel mortgage of November 14, 1929.

Jacobs-Carmack Gin, a corporation, after being served with summons and having failed to appear, except, demur, plead, or answer in case No. 2807, a default judgment was on September 9, 1932, rendered against Jacobs-Carmack Gin, a corporation, in favor of the plaintiff for the sum of $1,960.18 and costs of the action, and decreeing the foreclosure of plaintiff's chattel mortgage upon the five size 70 Mitchell F. E. C. units.

The issues as between the plaintiff and the defendant were, on March 9, 1933, tried to the court, a jury being specifically waived. At the conclusion of the evidence, the plaintiff filed its request for separate findings of fact and conclusions of law, which were made by the court and filed on May 15, 1933. The court, after finding the execution of the notes, the real estate mortgage, and the two chattel mortgages by Jacobs-Carmack Gin, as set forth in the pleadings, found that the Chickasha Cotton Oil Company obtained a judgment against Jacobs-Carmack Gin, a corporation, in the district court of Harmon county on October 7, 1932, in case No. 2789, foreclosing the defendant's real estate and chattel mortgages as above referred to and also that:

"Seven. The Jacobs-Carmack Gin outfit was what is commonly termed a five stand plant, and the mortgages given by it to the Chickasha Cotton Oil Company covered and included five feeders.

"The five feeders were specifically mentioned in the mortgages and were included in the general description of a complete gin plant.

"Eight. The plaintiff, John E. Mitchell Company, in the sale of the five Mitchell F. E. C. units to the Jacobs-Carmack Gin, accepted as part payment for same the five feeders then comprising a necessary part of the gin plant, and which were included in the mortgages of the Chickasha Cotton Oil Company, and allowed a credit of $600 therefor.

"These five feeders were removed from the plant and stored in the warehouse on the premises of the gin plant, at the direction of the John E. Mitchell Company, and were in said warehouse at the time of the trial of this cause.

"Nine. After the Jacobs-Carmack Gin Company received the five Mitchell F. E. C. units, it removed the five feeders then in the plant, stored the same as stated, and in the place of said feeders it installed the five F. E. C. units purchased from the said John E. Mitchell Company.

"Said feeders included in the mortgages of the Chickasha Cotton Oil Company and the five Mitchell F. E. C. units sold to the Jacobs-Carmack Gin Company are very similar in size and shape and used for practically the same purpose.

"Ten. After the said five Mitchell F. E. C. units were delivered to the Jacobs-Carmack Gin Company, and installed as aforesaid, the same became a necessary and integral part of the gin plant, and were securely attached to the plant by means of bolts and belting, and an iron pipe used to brace the same, which was attached to the units and bolted firmly to the floor.

"Eleven. After the said installation of the said units, and the removal of the said five feeders, the said five units cannot be removed without material and substantial damage to the gin plant by way of greatly depreciating the mortgage security of the said Chickasha Cotton Oil Company on said gin plant."

The court in his conclusions of law found that the defendant was entitled to a judgment declaring that the five size 70 Mitchell F. E. C. units were included in the mortgages of Chickasha Cotton Oil Company, and that they constituted a first and superior mortgage lien to the chattel mortgage held by the John E. Mitchell Company, and:

"Three. The Chickasha Cotton Oil Company is entitled to said priority not only on account of the fact that said F. E. C. units have been firmly attached to the gin plant, but the Mitchell Company impliedly agreed that the F. E. C. units should be substituted for the five original feeders when it traded for and removed the said five feeders covered by the mortgage of the Chickasha Cotton Oil Company. It might be said to have converted said feeders to its own use, notwithstanding the said mortgage of the Chickasha Cotton Oil Company."

Journal entry of judgment was filed August 4, 1933, embodying the court's findings of fact and conclusions of law and decreeing the mortgage liens of the defendant,

276

Chickasha Cotton Oil Company, on the five size 70 Mitchell F. E. C. units to be a valid, subsisting, unsatisfied, first, and superior lien to the mortgage lien of plaintiff thereon, and that the plaintiff John E. Mitchell Company, have judgment against the Jacobs Carmack Gin in the sum of $1,960.18, with interest thereon at the rate of 8 per cent. per annum from September 9, 1932, and costs of the action, and establishing the same as a lien upon the five size 70 Mitchell F. E. C. units, subject to the mortgage lien of the defendant, and that plaintiff have execution and order of sale issued to the sheriff of Harmon county to levy on, advertise, and sell the five size 70 Mitchell F. E. C. units, subject to the first and superior lien of the defendant, Chickasha Cotton Oil Company. The plaintiff duly excepted to the findings of fact, conclusions of law, and the judgment of the court, filed timely motion for a new trial, which was overruled, exceptions allowed, and this case is here on appeal.

Plaintiff in its petition in error sets forth ten separate assignments of error, but it is our view that the tenth assignment of error—

"(10) Said court erred in rendering judgment that the defendant in error Chickasha Cotton Oil Company, a corporation, mortgage lien on the five size 70 Mitchell feeder, extractor and cleaner units, was first and superior lien to the mortgage lien of the plaintiff in error John E. Mitchell Company, a corporation, thereon"

—is the only one necessary to be considered.

"Real property" is defined by section 11722, O. S. 1931, as:

"Second. That which is affixed to land.

"Third. That which is incidental or appurtenant to land."

"Fixtures" are defined by section 11724, O. S. 1931, as:

"A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs; or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws."

Section 11259, O. S. 1931, provides in part as follows:

"Every instrument substantially the same as the above (statutory form) shall be deemed a good and valid mortgage, with all contracts and covenants essential to protect the rights of the holder thereof; but any further lawful contract embodied therein shall be binding upon the parties thereto. * * *"

The evidence in this case fully warrants the finding of the trial court that the five size 70 Mitchell F. E. C. units "were securely attached to the plant by means of bolts, and belting, and iron pipe used to brace the same, which was attached to the units and bolted firmly to the floor."

The Supreme Court of California held, under a statute somewhat similar to the Oklahoma statute:

"Machinery attached to a building with bolts and screws is a fixture, within the meaning of section 660 of the California Civil Code." McNally v. Connolly, 11 P. 320.

It was held in Lundquist et al. v. Olympia National Bank et al. (Wash.) 234 P. 453:

"Where a purchaser under a conditional sales contract made renewals and replacements of machinery, repairs or betterments, improvements, in the nature of accession to go with the plant, they were subject to conditional sale contract and mortgage originally given on the property."

Counsel for plaintiff urges the case of Murray Company v. Chickasha Cotton Oil Co. et al., 73 Okla. 106, 174 P. 1091, is conclusive of this case. We have carefully reviewed Murray Company v. Chickasha Cotton Oil Co., supra, which in our opinion presents a different state of facts than those in the present case. In Murray Company v. Chickasha Cotton Oil Co., supra, the real estate mortgage to Chickasha Cotton Oil Company is not set forth in full. In the Murray Case the purchase contract between Branum and Murray Company provided that the machinery should not be annexed or become a part of any realty until the same had been fully paid for, and the chattel mortgage was given by Branum to Murray Company to secure the payment of the notes given as part of the purchase price for the machinery. In the Murray Case it was held that the evidence as to the nature of the annexation of the machinery to the realty and as to the effect of its removal from the realty conclusively showed that the machinery could be removed without injury to the real property. The court in the present case did not so find, but did find that "the said five units cannot be removed without material and substantial damage to the gin plant," and it is our view after examining the record that there was competent evidence to support this finding. In Murray Company v. Chickasha Cotton Oil Co., supra, it was said:

"On this question (where the mortgaged

chattel can be removed without injury to the realty) there is some conflict of authority; but the weight of authority, which seems to be founded on sound principles of justice, sustains the rule that where a mortgaged chattel is attached to mortgaged realty, and the same can be removed without injury to the real property, the holder of the chattel mortgage does not lose his rights in the chattel, and especially this rule is true where the vendor of a chattel has an express agreement with his vendee that the same shall not be attached to the realty and become a part thereof until the vendor's mortgage lien is discharged."

In the present case the situation is reversed. Plaintiff did not in the purchase contract with Jacobs-Carmack Gin or in the chattel mortgage have an express agreement that the chattel should not be attached to the realty and become a part thereof until the mortgage lien had been discharged. On the contrary, the defendant in its real estate mortgage did have an express provision that no part of the machinery, fixtures, or appliances upon the mortgaged property or thereafter placed thereon during the life of the mortgage should be displaced or removed from its place upon the premises and supplanted by other machinery, fixtures, or appliances without the written consent, in advance, of the mortgagee; also, that if any of the machinery, fixtures or appliances should be removed from or displaced and be supplanted or replaced by other machinery, fixtures or appliances without the written consent, in advance, of the mortgagee, the entire sum remaining unpaid under the mortgage should become immediately due, and the mortgagee should have the right to at once demand payment thereof and to institute proceedings to foreclose the mortgage. It further provided that any and all additional machinery, fixtures or appliances or attachments to the mortgaged property should be and at once become a part of the realty and as security under the mortgage for the payment thereof and a superior lien to any and all claims whatsoever against the mortgagor for whatever sum might remain due under the mortgage. This mortgage was filed for record on November 14, 1929, six months before plaintiff's chattel mortgage was executed and filed in the office of the county clerk of Harmon county. Defendant's chattel mortgage had also been on file for more than six months prior to plaintiff's chattel mortgage.

Section 11262, O. S. 1931, provides:

"The record of a mortgage, duly made, operates as notice to all subsequent purchasers and incumbrancers."

Plaintiff not only was charged with the notice of defendant's real estate mortgage, but also with the terms thereof and when plaintiff delivered its five Mitchell F. E. C. units to Jacobs-Carmack Gin, and they were affixed to and became an integral part of the gin by replacing the 5-70 saw Munger huller brush gins and feeders, they became subject to the mortgage lien of the defendant, Chickasha Cotton Oil Company.

It is also significant that books of account of the Jacobs-Carmack Gin show that the purchase price of the five size 70 Mitchell F. E. C. units was $3,200, for which plaintiff was given credit on the books of Jacobs-Carmack Gin, and against it there was a $600 debit "to old model," which the record shows represented the allowance made by the plaintiff for the feeder, extractor, and cleaner units which were removed from the gin plant proper and stored in the cotton house of Jacobs-Carmack Gin.

It is our view that the circumstances in this case take it out of the rule announced in Murray Company v. Chickasha Cotton Oil Co. et al., supra; that the findings of the trial court were supported by competent evidence, and that the trial court's conclusions of law should be sustained.

The judgment is, therefore, affirmed.

The Supreme Court acknowledges the aid of Attorneys Wm. O. Beall, Hulette F. Aby, and W. D. Abbott in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Beall and approved by Mr. Aby and Mr. Abbott, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BAYLESS, BUSBY, and GIBSON, JJ., concur.